VIOLRPT
(08/2016)

# United States District Court
# for The District of Massachusetts

VIOLATION REPORT

**Name of Offender:** Cameron M. LaCroix                               **Case Number:** 14CR10227

**Name of Sentencing Judicial Officer:**     Honorable Patti B. Saris
                                             Chief, U.S. District Judge

**Date of Original Sentence:** November 25, 2014

**Original Offense:** Intentionally Causing Damage to a Protected Computer, in violation of 18 USC § 1030(a)(5)(A)                                                   **Class Felony:** Class C Felony

**Original Sentence:** 48 months of custody followed by 36 months of supervised release. Special Conditions to include: (a) search with or without a warrant, with reasonable suspicion concerning unlawful conduct; installation of computer monitoring software and monitoring of computers; substance use counseling and testing; mental health treatment; take medications as prescribed; inform anyone in the household that any computer in the household may be subject to monitoring; disclose all account information relative to internet access, social networking, and email, including user names and passwords and information to monitor computer usage; consent to third party disclosure to any employer or potential employer; prior to accepting any employment, seek approval of the Probation Office; pay the balance of the restitution according to a court-ordered repayment scheduled; no new credit charges or credit lines without Probation approval while any financial obligations remain outstanding; and provide access to any requested financial information.

**Type of Supervision:** Supervised Release           **Date Supervision Commenced:** June 09, 2017

**Assistant U.S. Attorney:** MacKenzie Queenin           **Defense Attorney:** Charles McGinty

Should the Court find that defendant **Cameron M. LaCroix** has committed the alleged violations, this Violation Report is submitted to the Court with information it will need to render an appropriate disposition on the violations contained in the Second Amended Petition for Warrant/Summons (Probation Form 12C) dated 3/18/2019. Please note that a similar petition has been filed concerning Mr. LaCroix's concurrent term of supervised release related to Criminal Docket #14CR10162.

## Part A: Summary of the Offense and Victim Information

Between February 16 and February 19, 2013, Cameron LaCroix identified and exploited a website vulnerability to create Zendesk accounts with elevated privileges. He used this heightened access

**GOVERNMENT EXHIBIT 3**

to disable a security measure designed to ensure that only Twitter employees could view Twitter helpdesk information stored at Zendesk, such as support tickets, customer email addresses, and other contact information. LaCroix was thereby able to see all support tickets for any of Zendesk's customers, including Twitter. LaCroix exported approximately one million Twitter support tickets to computers outside of Zendesk's network. Those support tickets included email addresses and contact information for each customer.

LaCroix identified the email addresses that were used to register Twitter accounts for Jeep and Burger King. After compromising and taking control of those email addresses, he submitted password reset requests for those accounts. Twitter's responses were sent to the compromised email addresses, which LaCroix controlled. LaCroix changed the passwords to Jeep and Burger King's Twitter accounts, assumed control of those accounts, and proceeded to deface them with text and pictures. For example, Burger King's feed falsely reported that the company had been sold to its chief competitor. LaCroix also deleted the incoming support tickets those companies attempted to submit to Zendesk reporting that their Twitter accounts had been hijacked.

During a proffer session protected pursuant to USSG §1B1.8, LaCroix admitted that he decided to target Zendesk because he wanted the Twitter handle "@Cam." He had been dealing with stressful events (the death of his grandfather, the death of his dog, and a burglary at his home) which led him to seek a high from hacking. LaCroix provided detailed information as to how he was able to commit the offense described above.

According to Twitter, the loss associated with the above was at least $34,000 in "employee time alone." According to Zendesk, the loss associated with the defendant's conduct was $233,502.55 and included engaging a public relations firm to assist with public and customer communications regarding the incident; a security assessment and penetration testing; and legal representation relative to engagement with law enforcement, an assessment of legal and contractual obligations regarding the incident, and an assessment of potential liability.

The identified victims in this case are Twitter and Zendesk. The Court imposed a $25,000 restitution ($3,000 to Twitter and $22,000 to Zendesk).

**Part B: Nature of Non-Compliance**

| Violation Number | Nature of Non-Compliance |
|---|---|
| I | **Violation of Standard Condition #6: The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.**<br><br>(A) On 11/30/18, via an email sent to this officer, Mr. LaCroix indicated that he submitted his resignation to U-Haul on 11/17/18. At least ten days prior to 11/17/18, Mr. LaCroix had provided no specific information regarding a termination date with his employer. Thus, Mr. LaCroix failed |

|     |     |
| --- | --- |
|     | to notify the probation officer at least ten days prior to terminating employment. In a subsequent conversation with this officer, Mr. LaCroix indicated that he terminated employment with U-Haul, but did not have any other employment in place.<br><br>(B) On 3/5/19, during a meeting at his residence, Mr. LaCroix indicated that Injung Park was now residing with him. Mr. LaCroix failed to provide any prior notification regarding this change of residence status. |
| II  | **Violation of Special Condition #3: The defendant shall allow the U.S. Probation Office to install software designed to monitor computer activities on any computer the defendant is authorized to use. The defendant shall contribute to the cost of such monitoring services, based on the defendant's ability to pay, as deemed appropriate by the Probation Office. The defendant shall not attempt to remove or otherwise defeat such systems, and shall allow the Probation Office to examine such computer and receive data from it any reasonable time.**<br><br>On 12/4/18, during a home visit, this officer observed an operational desktop computer in Mr. LaCroix's apartment (this computer was not observable during prior home visits). This officer asked: (a) if Mr. LaCroix was using the computer to access the internet and (b) inquired about the duration of computer use. Mr. LaCroix admitted that he had been using the computer and accessing the internet for approximately two (2) hours. As Mr. LaCroix failed to provide any prior notification of this computer use, the Probation Office was not able to install software designed to monitor computer activities during the times that Mr. LaCroix admitted to using the computer. |
| III | **Violation of Mandatory Condition: The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year, as directed by the probation officer.**<br><br>On 1/12/19, Mr. LaCroix provided a urine sample for testing. On that date, he denied using any illicit substances. This sample tested positive for buprenorphine and fentanyl. On 1/24/19, during an office meeting with this officer and Supervising U.S. Probation Officer Lisa Paiva, Mr. LaCroix denied using buprenorphine and/or fentanyl prior to providing the sample on 1/12/19. GCMS testing confirmed that Mr. LaCroix's urine sample was positive for fentanyl. |

| | |
|---|---|
| | |
| **IV** | **Violation of Mandatory Condition: The defendant shall not commit another federal, state, or local crime.**<br><br>According to information obtained from the United States Attorney's Office, District of Massachusetts, from August to November 2018, LaCroix worked for UHaul as a general manager. He was based in their West Roxbury, MA and Brighton, MA locations. In October, UHaul's Audit Department notified their Credit Card Processing Department of suspicious refunds being applied to twelve pre-paid Bancorp Bank credit card numbers. UHaul's Credit Card Processing Department also advised that 33 different UHaul employees from 35 different UHaul locations had purportedly initiated the refunds on behalf of what appeared to be fictitious customer names. The majority of the reservations were cancelled immediately after they were made, further signaling that the reservations were fraudulent and were never intended for utilization. UHaul's Director of Data Privacy and Security determined that the reservations were made via a TOR browser, rendering the IP addresses untraceable. UHaul concluded that the account credentials of the 33 employees who had purportedly authorized the transactions had been compromised and that someone was signing into their accounts without their authorization. UHaul contacted employees via email and instructed them to reset their passwords. Further investigation by UHaul lead to video footage of a man that appeared to be LaCroix withdrawing funds with one of the pre-paid cards. UHaul planned to terminate LaCroix, but on or about November 17, 2018, he resigned. |
| **V** | **Violation of Standard Condition #3: The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**<br><br>On 1/12/19, Mr. LaCroix provided a urine sample for testing. On that date, he denied using any illicit substances. This sample tested positive for buprenorphine and fentanyl. On 1/24/19, during an office meeting with this officer and Supervising U.S. Probation Officer Lisa Paiva, Mr. LaCroix denied using buprenorphine and/or fentanyl prior to providing the urine sample on 1/12/19. GCMS testing confirmed that Mr. LaCroix's urine sample was positive for fentanyl. Thus, Mr. LaCroix failed to answer truthfully this officer's inquiry regarding the use of fentanyl. |

**Part C: Custodial Status on Violation**

On 2/11/19, Mr. LaCroix appeared before the Honorable Marianne B. Bowler, U.S. Magistrate Judge, for an Initial Appearance Regarding Revocation of Supervised Release. On that date, the Court ordered Mr. LaCroix released on his existing conditions and the following additional conditions: (a) defendant to surrender passport to USPO and obtain no passport or other travel document; (b) defendant may only use his own computer with installed monitoring software; (c) defendant subject to GPS monitoring; and (d) warrant in abeyance to issue. Mr. LaCroix has remained at liberty since his Initial Appearance.

**Part D: Summary of Supervision**

Mr. LaCroix began this term of supervised release on 6/9/17. On that same date, he started a concurrent term of supervised release corresponding with his conviction associated with Criminal Docket #14CR10162 (Honorable Mark Wolf, Senior U.S. District Judge). From approximately the beginning of June 2017 until the end of January 2018, Mr. LaCroix resided at 430 Dudley Street, Boston, MA. Since leaving the Dudley Street residence, Mr. LaCroix has resided at 151 Concord Street, Newton, MA.

From about 1/23/17 until 11/17/18, Mr. LaCroix worked at two U-Haul locations. Mr. LaCroix indicated that he worked as a general manager. In accordance with Court-ordered special conditions, probation staff conducted required third-party risk assessments in regard to the U-Haul employment. On 11/30/18, via email to this officer, Mr. LaCroix reported that he submitted his resignation to U-Haul on 11/17/18. U-Haul staff confirmed that Mr. LaCroix's employment with the organization ended on 11/17/18. Mr. LaCroix remained unemployed until 1/5/19, when he reportedly began working as a driver for Habitat for Humanity. This officer had approved this employment by conducting at third party risk assessment and contacting the employer. This officer requested that Mr. LaCroix provide a pay stub for verification purposes. At the time of this report, Mr. LaCroix has provided a pay stub for verification purposes.

In March 2018, with this Court's permission, Mr. LaCroix traveled to South Korea to visit his girlfriend, who resided there. In December 2018, Mr. LaCroix indicated that he would like to again travel to South Korea. This officer advised Mr. LaCroix that the Probation Office would not be able to support his travel request at that time due to Mr. LaCroix's lack of employment/income and restitution owed. However, Mr. LaCroix was advised that he also has the ability to petition the Court to make his international travel request, regardless of the Probation Office's position.

Between July and September 2017, Mr. LaCroix participated in a psychological evaluation with Dr. John Cusack and a psychiatric evaluation with Dr. Donald L. Sherak, both of which recommended that participation in mental health treatment and/or medication monitoring was not warranted at the time. However, Mr. LaCroix reported participating in periodic informal counseling with Robert Carr, LICSW, during his term of supervised release.

Until 1/12/19, when he tested positive for fentanyl, Mr. LaCroix's urine screens had been negative. To date, Mr. LaCroix has not participated in any formal substance abuse treatment while on

supervised release. However, given this officer has initiated a referral to Hope House for a substance abuse assessment, which is pending at the time of this report.

On 1/24/19, this officer and Supervising U.S. Probation Officer Paiva met with Mr. LaCroix to address his reported concern about supervised release and his Court-ordered conditions. During that meeting, officers also addressed Mr. LaCroix's positive drug screen (fentanyl) and coached Mr. Lacroix on the health risks and potential consequences of opiate use. Mr. LaCroix denied any use and denied needing or wanting any substance use treatment. Notably, Mr. LaCroix provided a eight (8) additional urine samples that tested positive at the local level, but were not confirmed via GCMS testing (1/24/19-local positive for fentanyl and buprenorphine; 2/4/19-local positive for fentanyl; 2/11/19-local positive for fentanyl; 2/14/19-local positive for fentanyl; 3/6/19-local positive for fentanyl and buprenorphine; 3/14/19-local positive for fentanyl; 4/11/19-local positive for fentanyl; 4/17/19-local positive for fentanyl). On 3/25/19, Mr. LaCroix participated in a substance use assessment at Hope House. According to the Hope House assessment report (dated 4/1/19), Mr. LaCroix "adamantly denied use of any substances." Based on her evaluation, the clinician did not recommend further substance use treatment. Throughout this term of supervision, Mr. LaCroix has denied any illicit substance use.

### Part E: Statutory Penalties and Guideline Range

Title 18 U.S.C. § 3583(e)(3) confirms that if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release, **the statutory maximum penalty is two (2) years** since the offense of conviction that resulted in the term of supervised release was a **Class C.**

Title 18 U.S.C. § 3583(h) provides the Court the authority to impose a new term of supervised release in instances where revocation occurs and a term of imprisonment is imposed. The length of the term should not exceed the term of supervised released authorized by statute for the offense that resulted in the original term of supervised release, which in this case is **3 years, less any term of imprisonment that was imposed upon revocation of supervised release**.

Title 18 § 3771(a) states that victims have the right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused; the right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding; the right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding; and the reasonable right to confer with the attorney for the Government in the case. In the instant matter, the Probation Office has discussed the providing of this notice with the Assistant U.S. Attorney in the instant matter.

### Part F: Applicable Policy Statements

According to U.S.S.G § 7B1.1, Cameron M. LaCroix's highest grade of violation is classified as a **Grade B** violation. The offender's **criminal history is Category IV**. This policy statement of the guidelines as set forth at the table at U.S.S.G. § 7B1.4, calls for **an imprisonment range of 12**

**to 18 months.**

The original offense occurred subsequent to the effective date of the Protect Act (April 30, 2003) and as a result the statutory caps on re-imprisonment are not aggregate. Therefore, imprisonment for prior violations of supervised release is not deducted from statutory jail time available, but it is deducted from the maximum supervised release term available.

Pursuant to U.S.S.G. § 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4, and any such unserved period of community confinement, home detention, or intermittent confinement may be converted to an equivalent period of imprisonment.

According to § 7B1.1, Application Note #1, under 18 U.S.C. §§ 3563(a)(1) and 3583(d), a mandatory condition of probation and supervised release is that the defendant not commit another federal, state or local crime. A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct.

## Part G: Potential Conditions of Release

The Court may impose additional conditions of supervision to the extent that such conditions are reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant and involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in 18 U.S.C. §3553(a)(2) (See 18 U.S.C. §§ 3563(b) and 3583(d)).

The proposed special conditions of probation or supervised release (detailed below) serve the statutory sentencing purposes of: deterrence, public protection, rehabilitation, reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A)-(D). Furthermore, these conditions enable the probation officer to satisfy statutory requirements to keep informed as to the conduct and condition of the defendant; to report the defendant's conduct and condition to the sentencing court; and to aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

**1. You must pay the balance of any fine or restitution imposed according to a court-ordered repayment schedule.**

**2. You are prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.**

3. You must provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office.

4. You must participate in a program for substance abuse counseling as directed by the Probation Office, which program may include testing, not to exceed 104 drug tests per year to determine whether you have reverted to the use of alcohol or drugs.

5. You must participate in a manualized cognitive behavioral treatment program, as directed by the Probation Office. Such program may include group sessions led by a counselor, or participation in a program administered by the Probation Office.

6. You must use your true name and are prohibited from the use of any false identifying information which includes, but is not limited to, any aliases, false dates of birth, false social security numbers, and incorrect places of birth.

7. You must submit to periodic polygraph testing as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.  When submitting to a polygraph exam, you do not waive your Fifth Amendment rights, and your exercise of such rights will not give rise to a violation proceeding. The results of the polygraph examinations may not be used as evidence in Court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions and/or could initiate a separate investigation.

8. You must not possess or use any computer or internet-capable device without prior approval from the Probation Office.

9. You must allow the installation of computer internet monitoring software on approved internet capable devices, but may still use a computer for work purposes that has been previously approved by the Probation Office. You must not attempt to remove or otherwise defeat such systems, and must allow the Probation Office to examine such computer and receive data from it at any reasonable time.

10. You must advise anyone using the monitored internet capable devices that those devices are being monitored by the Probation Office.

11. You must disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office. You must also, if requested, provide a list of all software/hardware on your computer, as well as telephone, cable, or internet service provider billing records and any other information deemed necessary by the Probation Office to monitor your computer usage.

12. Prior to accepting any form of employment, you must seek the approval of the Probation Office, in order to allow the Probation Office the opportunity to assess the level of risk to the community you may pose if employed in a particular capacity.

13. You shall be required to contribute to the costs of evaluation, treatment, programming, and/or monitoring (see conditions #4, #5, #7, and #9), based on the ability to pay or availability of third-party payment.

Respectfully Submitted,

*/s/ Justin Prophet*

Justin Prophet
U.S. Probation Officer
Date Submitted: 4/22/2019

APPROVED:

*/s/ Lisa Paiva*

Lisa Paiva
Supervising U.S. Probation Officer
(617) 748-4430
Date Reviewed: 4/22/2019